Good morning, Your Honours. My name is Richard Sax. I'm representing myself and the Law Office of Richard Sax, defendants and appellants in this case. Your Honours, this case involves claim funding agreements between Fast Trak and Sax. I believe the evidence demonstrated that Fast Trak advanced Sax and his clients' money for the sole purpose of bringing lawsuits. I contend that these facts and the evidence demonstrated that these transactions were chamfertous, usurious, and that the loans were recourse loans instead of... Did you collect that amount from your clients when you settled their suits or won their suits, the interest rates you're complaining about? No. Did I collect the interest rate from the clients? No. Did they pay that interest rate to Fast Trak? No. So no client ever fulfilled the ones that were the primary contracts with the clients to Fast Trak? That's true. That is true. Why would that be? Mr. Sax, let me ask you a couple of questions. In your agreement with Fast Trak, if you didn't bring any lawsuits but were able to settle the cases simply on demand letters and by non-litigious negotiation, would that be all right? Would you have to pay back? I think so. I think the answer is yes. It may be, but every single case was in litigation or going to litigation, and in my negotiations with Fast Trak, they were definitely encouraging me to file lawsuits in several particular cases. So the party's intention... Picking up on your choice of words of encouraging you, the determination of whether to file a suit or not was done by your client and by you, not by Fast Trak, right? That's true. That's true. Now, secondly, let me ask you about your seriousness. The advance by Fast Trak was a contract where the condition of repayment was the realizing of some income or assets through litigation. Is that correct? Yes. Now, if you were on a terrible, bad streak and lost all your cases, right, and you weren't able to negotiate any favorable settlements, they wouldn't get paid back, would they? If every single case generated nothing, that's correct. So there was no personal liability by Mr. Sachs to Fast Trak. They couldn't come and take your home away and your automobile and your 401k if you have one. There wasn't any personal liability or guarantee by Mr. Sachs to Fast Trak as to any of these advances, correct? Well, it is not true to the extent that if that Sachs was liable for, even if Sachs hadn't won every single case or it only generated income on one or two cases, all of that money would go to Fast Trak. So they had themselves secured on primary, secondary, and also Mr. Sachs. An effective way of answering your question is to change the facts, the hypothetical, right? But stick with my hypothetical if you would. You're not obliged as Mr. Sachs personally, Mr. and Mrs. Sachs personally if you live in California, to pay back to Fast Trak unless there are assets that devolve from the settlement or winning of those lawsuits. True? Yes, Your Honor. Thank you for answering my question. Okay. I don't think you had a chance to finish Judge Jack's question. That's true. Judge Jack Anner. You didn't settle or try to judgment any of these cases that you had Fast Trak contracts with? Well, we tried numerous cases to judgment. That Fast Trak had advanced the money? Yes, I tried. What did you pay them back with? Did you ever pay them any money? No, I did not. Did your clients ever pay them anything? No. Did your clients get the money from settlements? In several cases, they did. Without any expenses going to Fast Trak? Without money going to Fast Trak, yes. Either through you or through them? Well, I felt like it was not my client's obligation to pay them. Maybe I'm wrong about that. Well, they signed primary contracts. But my clients did get some money. What do you mean by some? There were some settlements in a few of the cases. Well, when you entered into the contracts with Fast Trak, you must have had your clients encourage them to enter into these contracts. Did you know that you were going to claim that they were usurious? No. Did you think they were usurious? They might have been. When you entered into them? The rate of return is quite extraordinary. It is, but you entered into them, and you're an attorney. Yes, I did, Your Honor. So did you just never intend to pay them back? I fully intended to pay them back. At that rate, the usurious rate that you're claiming? Yes, but I will say that later I determined that these loans were under the law of the State of New York and found the case of Justinian Capital, which appears to be. . . Well, that Justinian Capital, though, had to do with them controlling the actual litigation, buying the case and doing it themselves. They didn't do that here. I'm sorry? They didn't buy the case and litigate it themselves, as Judge Jack just suggested, did they? No. You did. Correct. Yes. Are your clients being sued by Fast Track? Are they what? Are your clients being sued by Fast Track, those that have received the sum? No, they are not. Okay. So how could that be chamfered? Well, under the Justinian Capital case, it appears that these funds were loaned for the specific purpose of bringing litigation. But they didn't buy the litigation. They're not pursuing or they didn't pursue the litigation. No, but they enabled the plaintiffs to pursue the litigation. That's not chamfered, is it? What's your argument as to the fact that these were loans, they're usurous loans? Well, I believe that the trial court needs to go back and Fast Track characterized the transactions in the documents, saying that it was not a loan and it was not recourse and so forth. But I believe the trial court should have gone into more depth and taken testimony of witnesses to see what the totality of circumstances were. Explain to me why under these circumstances here that we know that these were loans. What is a loan? Let's get back to basics. How do we know something is a loan? Someone gives you money and you promise to pay it back. Okay. Is that what happened here? That was the agreement. It was a big condition preceded, though, to paying back the loan. Unless the plaintiff lost every single case, there is a promise to repay. And you secured those with other cases. You secured the repayment of Fast Track, say, with Client A. You secured it with the recovery from Client B, C, and D that didn't have contracts with Fast Track. Correct, even all of, not just B, but C, D, E, F, and so forth, secured by all of the secondary cases. So you knowingly entered into what you consider an illegal contract with Fast Track. I didn't know it was illegal at the time. When did you figure it out? Perhaps a year and a half ago, researching the issue of Champerty coming across the Justinian Capital case in the state of New York that applies to these companies that loan money for litigation. Do you want to save some time for rebuttal? Did you want to save some time for rebuttal? Yes, please, Your Honor. Good morning, Your Honors. Kira Schlesinger for Fast Track, and may it please the Court. So we're only talking about the secondary loans here, correct? Or the secondary agreements? The secondary agreements are admittedly a little less forthright in terms of when you read through it, especially an attorney like Mr. Sachs, it's extraordinarily clear, I believe. But the primary cases are also at issue in some instances, I believe. But they're not defendants here, the individual. That's true, Your Honor. They're not defendants. The only defendant here is Mr. Sachs. That's true, Your Honor. You can only go against him based on the secondary agreements? No, Your Honor. You can sue him on the primary agreements as well? There are two causes of action on which we got judgment in the district court. The first one is the breach of contract, which goes directly to the secondary contracts. But it also is a breach of fiduciary duty. The primary contracts have not only does the underlying plaintiff agree to all of the terms, the underlying plaintiff also signs an irrevocable instructions to counsel. And in turn, Mr. Sachs signs as a fiduciary promising to hold the money for fast track the amount that's due. That's the primary. That's on the primary. That's on the primary ones, yes, Your Honor. And not only are they supposed to hold the money, they're supposed to notify fast track when the case resolves. You're the beneficiary of that agreement. That's correct. And it is actually a fast track agreement in that what happens is the originally the underlying plaintiff needs money or for whatever reason, and fast track does not inquire into what the money is for at all. But they want money during the pendency of their claim, and generally speaking, Mr. Sachs would approach fast track and say, here's the case. I think it's good. And I know he raises, he says, oh, my clients encourage them. Well, as you pointed out or one of Your Honors pointed out, he makes the final decision, and we certainly he would be breaching his ethical duties if he allowed a third party to say you must file this case. That doesn't happen. And so the underlying plaintiff then signs the contract. He agrees to be the fiduciary. We have no idea when the case settles. That's part of his obligation, and that is on the underlying one. Let me just finish that out. So on the second cause of action, what did you actually recover with respect to those primary clients that actually recovered some money? Well, we haven't recovered. I think there might have been $10,000 at one point. But basically the damages that we prepared, and the damages were complicated because of the information coming into us was a little bit faulty. But the damages were primarily on the breach of contract case. Obviously, we're not going to. There's no, the damages as to the primaries was not segregated out? The damages as to the primary ones were subsumed, I think, into the secondary. Okay. All right, all right. Because various cases, and some of them didn't pan out. For example, there was a case, Terry Wolf, I believe she got $10,000, which Mr. Sachs took as attorney's fees. So that was part of the secondary, became part of the secondary. That's all she got. We're not going to go after her for the poor woman didn't get anything. She didn't get a thing after paying off Fast Track and the attorney. Right. Well, the attorney got it. Mr. Sachs got it. Right. But after paying off the attorney and you, the client didn't get anything. That's right. And Fast Track is not going to go after somebody who didn't get anything. So really what we're really talking about here for all intents and purposes are the secondary contracts against Mr. Sachs. Primarily, yes, Your Honor. That's correct. I think there may be one or two out there that most of them I don't know. So the secondary contracts are all tied to other litigation, any other litigation that he has and any other recoveries that he made. Right. They're pledged to his attorney's fees. And so while the breach – Why is that essentially a guarantee? It's not a guarantee. Why isn't it? It's not a guarantee because, first of all, there is no absolute guarantee of repayment. In other words – So if you take Judge Bea's example and he just runs into a string of – is that the whole premise is that he could well end up in this string of just one loss after another, after another, after another, after another, after another. Well, that's exactly right, Your Honor. And therefore it's indeterminate? Well, that's exactly right, but it doesn't have to be that extreme either. For example, and I had set forth an example – all my lovely notes and we're just doing questions. My goodness. But with that said, if you looked at one example that I had set out here, for example, let's say Fast Track had invested $125,000 in the primary case. What happens in the way these secondary contracts come about is that for whatever reason they feel that they need more money. I don't know. They decide they need experts, what have you. They need more money. Well, Fast Track has done some due diligence but doesn't really get into it. But when they come and ask for more money, they look at what their evaluation of the case was, what the strength of the case was, and they say, yeah, I don't know. That's going to be more than we think that's going to return. And so we will do it, but we want you to pledge your attorney's fees, and they take a selection of cases. Now, let's say on that $125,000, the first primary case lost completely. So we look at the second case. Let's say now he gets $5,000 in attorney's fees. Okay. Well, we're still out $120,000. The third case, maybe there's a $10,000 attorney fee award. We're still out money. So when you have five or six cases, depending on – it doesn't have to be that extreme of a bad streak, in other words. We all know juries can be interesting outcomes, shall we say. And so the idea here is that there is always – and the district court walked through this beautifully. There is always a risk. The amount is always a hazard. And that is one of the hallmarks of a loan. And, in fact, I think the court queried what the true nature of it is. Well, not only did the district court walk through that beautifully, going through New York capital case pretty much characteristic by characteristic to conclude these are not loans. The controlling law in New York is a case called Cash for Cases, Brunetti. And I've got the site here, although it was submitted. So it's 90 New York. It is. It's in the supplemental. Yes, Your Honors. Yeah, you just filed. Yes, Your Honors. And that case is almost on point exactly. In fact, one of the parties' name is even Fast Track Legal, which is not the same as mine. But, nevertheless, they walked through it also. And the defendant in that case argued that the high rate of actual return that was possible rendered this as a usurious loan. And the court looked at it and said no. And even in that one, though it was well, well over the interest rate in New York, the court looked at it and said no. And it was only after receiving proceeds, which is the same thing here, by the way. Mr. Sachs point blank said in his amended answer, he said he suddenly realized. He had every intention, he said, of paying them, but he suddenly realized after he was sued. So after receiving settlement proceeds, defendant refused to pay plaintiff the amount called for in the agreement. He argues that given the excessive interest rate, the agreement is usurious and unconscionable. We conclude the agreement is neither usurious nor unconscionable. Without the hallmarks of a loan, there is always a hazard. There is no definite period for repayment. Sophisticated parties and even the underlying plaintiffs were counseled by a sophisticated attorney. He's been practicing for 40 years. And there's no pressure for them to take this agreement, to agree to this. They don't need to. I mean, if they want the money, we were happy to help, but they don't need to. So there's no pressure. It's not a contract of adhesion in the sense that they're being forced to do it. They're sophisticated. There's none of the hallmarks. Roberts. Could there ever be a situation where the pledged cases on the secondary contracts are so certain of recovery that it's essentially a guarantee? Is there ever such a case? Could there be? Is there ever such a case in our society that something is so slammed down? Well, I don't know. Sure. I would venture to say that the juries I've dealt with, I would not want to say that. If it was conceivable that there was an absolute guarantee, I can't imagine such a case, to be honest with you, Your Honor. If it was a very, very strong case, well, that's still not a guarantee. Did he argue below that any of these pledged future cases on the secondary contracts were such that it was dead bang? No, Your Honor, he did not. And furthermore, he brought basically, you know, in New York, as here, it's an affirmative defense, it's a very strong bar. He really brought no facts to suggest that this was a usurious loan or that the amount was never a hazard or anything like that. He really brought no facts and no law. Let me ask you this. Has the New York Court of Appeals ever considered any situation like this? Yes, Your Honor, that is cash for cases v. Brunetti. Cash for cases. And that is controlling law in New York. So while I certainly appreciate it. Could you give me the citation of that? Certainly, Your Honor. This is from your supplemental brief, right? It is, Your Honor, and it was a slip of opinion. I apologize that I did not catch it. Cash for cases? That's correct. And it is 167 A.D. 3rd, 448. And the parallel site is 90 New York South, I believe it is, 3rd, 154. That's the appellate division. It is, Your Honor. But that's of the New York Supreme Court, which is the trial court. Well, the Supreme Court is the trial. So this is the appellate division above that trial court. And right now, this is controlling law in New York. This is an intermediate court in New York. It is, Your Honor. But they considered a case exactly like this one and, in fact, ruled that it is not a loan, it doesn't have the hallmarks of a loan, and it is the same analysis as the Supreme Court. But when we apply state law, we attempt to divine what the Supreme Court, what the appellate court in New York would do, not the appellate division. The court of appeals would do. Certainly. What you're saying is this is an intermediate court which correctly predicts what the court of appeal would do. They would seek the same outcome as we would here in California. Let me ask you this. In the Cash for Cases v. Brunetti case, was there any citation to any court of appeals cases? I don't know that it's been heard at that level. All right. I think you've answered that. I mean, I would be happy to take a look. But there have been a slew of cases on the other levels, Kelly Grossman. I've cited many of them in the supplemental, Your Honor. And they're all coming out the same way as our California cases. I mean, the district court below did a lovely job of walking right through it and carefully analyzing all of the hallmarks of a loan. And Champerty doesn't, I think as Your Honor has recognized, Champerty doesn't really apply at all here. It's whether or not there was a loan here. I'm sorry, Your Honor? Whether or not there was a loan here. But it's not a loan if at the end of the day there is always a risk and there's no determinate place, time when the money needs to be paid. The face of the schedule goes out, I think, five years, and yet there's no requirement that anybody pay that. And there's fine print underneath that schedule in the contracts that shows that. Of course, loans are not guaranteed either. Well, the loan is guaranteed. It's not in that sense that there's no condition precedent that has to occur. So there's a difference. The loan is I'm going to take a loan out on my house, and I don't care whether I get fired from my job or whatever. I still have to pay that back. So there is a very distinctive difference at play here, and that is that a condition precedent, they get some return on that action below. He needs to get attorney's fees. They need to get an award. Or we get nothing. When they abandon the cases they did with Pacheco, that's it. We're done. We don't get any money back. So it's different than a loan in a very, very critical way, Your Honor. I have one last question for you. On these pledged cases on the secondary contracts, who makes the decision that those are going to be the pledged case? I mean, are they actually identified this is a pledged case? They are identified, Your Honor. And who makes the assessment as to this is a good case to have as a pledged case? Many of them were already underlying cases, but I think that it's Mr. Sachs, and I'm afraid I don't have it. I'd be happy to do additional briefing on that or provide you a declaration. But I believe that many of them are cases that were already as primary cases, and so then they were pledged to back it up. Let me ask one last question. I haven't never seen, since I never practiced first century law, I have no idea how this worked. I learned a great deal reading about this. That's what keeps law interesting, isn't it, Your Honor? It never ceases to amaze one about what's going on out there. But what was I going to say? Does your client ever evaluate sort of like the strengths and weaknesses of whether it's the primary case or some secondary case that's pledged or pledged case for the secondary contract? Sure. I think they have an obligation to do some due diligence, but that's as far as it goes, just to look at it and say, yes, it's really a live case. It's not, you know, it is a case. It's been filed or about to be filed in such-and-such place. It's a personal injury. The accident report says, blah, blah, very cursory. And the reason that becomes very important, there's another case, Macaluso, which is RJC funding v. Macaluso. He was a very famous attorney, in fact, and he was falsifying the notary stamps on the applications. So it's useful to know to do some due diligence. I think everyone has that obligation. Okay. Thank you. Thank you, Your Honors. I appreciate your time. Okay. Thank you. I would like to point out that the Justinian Capital case is still good law in New York, that I think it applies directly to the facts of this case. Opposing counsel hasn't ever really addressed Justinian Capital. The trial court, even though it was the basis or main thrust of our position to the motion for summary judgment, the trial court did not address the Justinian Capital case either. The one case where the fast track got $10,000 after your attorney's fees, was that after your attorney's fees, or how did you calculate that? I'm not exactly sure what specific case that was. Well, when you the times, the one or more times that you have reimbursed fast track based on your secondary contract, did you first deduct expenses and attorney's fees before you reimbursed fast track? Yes, and it would have come out of Attorney's fees and expenses before It would have come out of attorney's fees. Okay. So fast track's money would have come out of your attorney's fees. Correct. And what is your attorney fee contract? A third, a half, or what is it? A third. Okay. I thought on your primaries that you never paid any money to fast track. That's true. And on the secondaries, you only paid like recently a nominal amount. Correct. I think that may be correct. And that's it? That's all that's ever been paid? And how much did they put forward on behalf of these cases? Approximately $125,000. Okay. Did you take out expenses plus attorney's fees before you paid back fast track? No. You never charged your client for expenses before you paid back fast track? That's how it should have worked, I believe. I know, but did it? Just out of curiosity. No. No, that's because you never paid them anything. It didn't take place. I'm just trying to figure out. Yeah, no, but I'm just. Out of curiosity. Yeah. How it should have worked. I have nothing. Okay, thank you. Thank you, counsel. We appreciate your arguments. Thank you.
judges: Paez, Bea, Jack